UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONTGOMERY ELLIOTT,

    Plaintiff                                                  Civil Action No. 06-14195

v.

                                                           District Judge Robert H. Cleland
                                                           Magistrate Judge R. Steven Whalen

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Montgomery Elliott brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On January 31, 2003, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging an onset date of June 20, 2002 (Tr. 40). After the Social Security Administration ("SSA") denied benefits on April 11, 2003, he made a timely request for an administrative hearing, held before Administrative Law Judge ("ALJ") Patricia Hartman on December 14, 2005 in Lansing, Michigan (Tr. 222). Plaintiff, represented by Mikel Lupisella, testified, as did Vocational Expert ("VE") Sandra Steele (Tr. 226-247, 248-252). On April 21, 2006, ALJ Hartman determined that Plaintiff was not disabled (Tr.21). On

August 31, 2006, the Appeals Council denied review (Tr. 5-7). Plaintiff filed for judicial review of the final decision on September 25, 2006.

## **BACKGROUND FACTS**

Plaintiff, born March 24, 1959, was age 47 when ALJ Hartman issued her decision (Tr. 40). He completed high school and received vocational training in heavy equipment operation, working previously as an auto glass technician and heavy equipment operator (Tr. 60, 65). Plaintiff alleges disability as a result of severe headaches, shoulder pain, and neck pain (Tr. 59).

### A. Plaintiff's Testimony

Plaintiff testified that he stood 6'1" and weighed 240 pounds (Tr. 227). Plaintiff, married, stated that he continued to operate a seasonal "lawn business" which required him to drive three days a week (Tr. 227). He opined that he would be unable to turn the business into a full-time operation due to physical problems which included headaches, shoulder pain, and foot pain due to diabetes (Tr. 228).

Plaintiff testified that he completed high school and received vocational training in heavy equipment operation (Tr. 229). He stated that he last performed full-time work in 2001 installing windshields (Tr. 229). He estimated that his former work required him to lift up to 100 pounds and stand for seven and a half hours each day (Tr. 229). He stated that he stopped working on June 20, 2002 following a shoulder injury (Tr. 229, 232). Plaintiff testified that before working as a windshield installer he worked as a heavy equipment operator, estimating that the heavy equipment job required him to lift up to 200 pounds (Tr. 230). He testified that his past relevant work also included truck driving (Tr. 230-232).

Plaintiff reported that his shoulder injury bothered him intermittently, sometimes creating difficulty performing household chores, characterizing the pain as a "three" to

"seven" on a scale of one to ten (Tr. 233-235). In contrast, he stated that diabetes, diagnosed in 2001, created foot pain and swelling "24/7" (Tr. 233). He indicated that he took Vicodin for foot pain, at minimum, on the three days each week that he mowed lawns, adding that the drug made him "dizzy and lightheaded" (Tr. 235-236).

Plaintiff estimated that he could walk for up to 1,600 feet and stand or sit for a maximum of 30 minutes (Tr. 236). He testified that he could lift up to 40 pounds with his right arm but only 10 with his left arm due to his injury (Tr. 237). He stated that he squatted, stooped, and descended stairs with difficulty, adding that his limitations included left finger numbness after working for a couple of hours (Tr. 237). He testified that he treated a sleep apnea disorder with a C-Pap machine (Tr. 239-240).

Plaintiff indicated that his financial problems caused by his disability created stress, but denied mental health counseling (Tr. 237-238). He reported that he read, watched TV, performed household chores, picked his daughter up from school, and helped her with homework on a daily basis, adding that he napped regularly for "an hour or two" (Tr. 238-241). He admitted that he continued to visit with family and friends occasionally, but that his physical problems limited his fishing to "once in a great while" (Tr. 238-239, 242). Plaintiff testified that financial constraints prevented him from undergoing additional shoulder surgery (Tr. 245).

B. Medical Evidence

1. Treating Sources

In July 2002, Steven Drayer, M.D., prescribed physical therapy following a May, 2002 left shoulder injury (Tr. 110). In September 2002, Andrew G. May, P.T,. found that therapy had "slightly improved" Plaintiff's ability to return to work (Tr. 107). Following September 18, 2002 surgery, therapy notes show an increased range of motion but continued

shoulder discomfort (Tr. 101).

In January 2003, R. Michael Kelly, M.D., noted that Plaintiff had experienced left shoulder pain since a work-related injury in May 2002 (Tr. 112). He noted further that Plaintiff reported that he had been "60 % normal" before re-injuring his left shoulder in a work attempt (Tr. 112). Finding Plaintiff "significantly impaired," Kelly opined that he was currently unable to work (Tr. 113).

The same month, Jerome V. Ciullo, M.D,. noted that Plaintiff experienced ongoing left shoulder discomfort upon reaching as well as degenerative arthritis (Tr. 173). Ciullo prescribed work restrictions prohibiting overhead activity, vibrating tools, or lifting greater than five pounds (Tr. 179). In March 2004, treating notes show that Plaintiff's shoulder surgery was postponed pending Plaintiff's weight loss (Tr. 189). In November 2004, podiatrist Harold D. Sterling, Jr., D.P.M., noted that Plaintiff complained of cold, sensitive feet, finding that Plaintiff experienced a "peripheral neuropathy" as a result of diabetes mellitus (Tr. 212). In January 2005 Plaintiff attended a "Diabetes Self Management Program" upon the advice of Joseph P. Van Ark, M.D. (Tr. 217).

### 2. Consultive and Non-examining Sources

In April 2003, a Residual Functional Capacity Assessment completed on behalf of the SSA found that Plaintiff retained the ability to lift 10 pounds; sit or stand for six hours in an eight-hour workday and perform sedentary work with a sit/stand option (Tr. 182). The report determined that Plaintiff retained a limited ability to push or pull in the upper extremities along with a restriction on left arm reaching (Tr. 182-184). The report found the absence of postural, visual, communicative, or environmental restrictions except for a prohibition on concentrated exposure to vibration (Tr. 185).

### C. VE Testimony

VE Sandra Steele classified Plaintiff's past relevant work as an auto glass installer, heavy equipment operator, and truck driver as semi-skilled at the medium level of exertion, adding that Plaintiff's testimony indicated that his auto glass installer's job included exertionally heavy work (Tr. 248).

The ALJ then posed the following hypothetical question:

> "If we assume an individual who is restricted to light work and can only lift 10 pounds occasionally with the left arm, should do no overhead reaching with the left upper extremity; no push, pull with the left upper extremity; no use of vibrating tools, could such a person do any of the claimant's past relevant work?"

(Tr. 249).

The VE found that given the above limitations, Plaintiff would be unable to perform any of his former jobs but retained the capacity to work as a gate or security guard (10,700 in the lower peninsula of Michigan); parking lot attendant (1,520); and self-service attendants (gas stations or car washes) (5,900) (Tr. 249). She testified further that if Plaintiff were restricted to sedentary work, he could perform the above jobs as well as positions as a security or surveillance system monitor (1,575); referral or information clerk (1,780); and cashier (7,500) (Tr. 250).

The VE opined that if Plaintiff's allegations of limitation with regard to foot pain were fully credible, he would be precluded from all gainful employment (Tr. 250). She concluded by stating that her findings were consistent with the Dictionary of Occupational Titles ("DOT") with the exception of her surveillance system monitor finding which relied on "Michigan Occupational Employment Systems Manual" and her own "familiarity and experience with the Michigan labor market" (Tr. 251).

**D. The ALJ's Decision**

ALJ Hartman found that although Plaintiff's osteoarthritis of the left shoulder, rotator cuff injury of the left shoulder, and peripheral neuropathy were "severe" impairments based 20 C.F.R. § 404.1520(c), neither condition met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation 4 (Tr. 16, 20).

The ALJ determined that although Plaintiff was unable to perform any of his past relevant work, he retained the residual functional capacity "to perform range of sedentary work reduced by the following limitations and restrictions: no pushing or pulling with the left upper extremity; no overhead reaching with the left upper extremity; and to avoid vibrating tools" (Tr. 17, 20). The ALJ adopted the VE's findings that Plaintiff could perform the work of a security or surveillance system monitor (1,575); referral or information clerk (1,780); and cashier (7,500) (Tr. 19).

The ALJ deemed Plaintiff's allegations of disability "not totally credible," observing that Plaintiff's daily activities included meal preparation, housework, yard work, and helping his daughter with her homework (Tr. 17). He noted further that Plaintiff continued to go out to dinner regularly and fish on a limited basis (Tr. 17).

**STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Hypothetical Question

Plaintiff faults the ALJ for discounting his allegations of disability, arguing that the hypothetical question did not encompass all of his work-related limitations. *Plaintiff's Brief* at 6-13. Citing *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987), he contends that the question's omissions tainted the VE's findings that he could perform limited range of sedentary work. *Plaintiff's Brief* at 9.

In *Varley v. Secretary of Health & Human Services,* 820 F.2d at 779, the court held that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." (internal citations omitted). The ALJ's credibility determination impacts the composition of a hypothetical question. "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

Substantial evidence supports the ALJ's choice of hypothetical limitations. I also disagree with Plaintiff's interwoven argument that the question fails to address his limitations as a result of foot pain. The hypothetical question (modified to limit Plaintiff to sedentary work at Tr. 249-250) accounted for Plaintiff's foot condition by limiting him to jobs (security or surveillance system monitor, referral or information clerk and cashier) which required only minimal walking or standing.

Further, despite Plaintiff's testimony that he experienced unrelenting foot pain as a result of peripheral neuropathy, the condition did not prevent him from working part-time, driving, reading, or performing household chores (Tr. 233, 238-241). Although Dr. Sterling

confirmed in November 2004 that Plaintiff likely experienced peripheral neuropathy, he noted that Plaintiff's symptoms "primarily occur[] in the evening, or when he is inactive" (Tr. 212). Significantly, Plaintiff told Sterling that his symptoms were "less noticeable while . . . working" (Tr. 212). The ALJ was entitled to reject Plaintiff's alleged degree of limitation from his foot condition. An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'" *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989); *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986). The deference allotted the credibility determination is applicable to the hypothetical question's composition. *Stanley, supra,* 39 F.3d at 118-119. Here, the ALJ's choice of hypothetical limitations (and her omission of others) stands well supported by record evidence.

### B. The Treating Physician

Plaintiff argues next that the ALJ committed reversible error by failing to discuss or adopt Dr. Kelly's January 27, 2003 finding that he was unable to work. *Plaintiff's Brief* at 16 *citing to* Tr. 113. Plaintiff contends that the omission deprived him of "a mandatory procedural protection." *Id.*; *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 546 (6th Cir. 2004).

Generally, "the reports of physicians who have treated a patient over a period of time . . . are given greater weight than . . . physicians employed and paid by the government . . ." *Allen v. Califano,* 613F.2d 139, 145 (6th Cir. 1980); 20 C.F.R. §404.1527(d) (evaluating evidence from treating sources). *See Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991)( "[I]t is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference.") In *Wilson v. Commissioner of Social Sec.,* the court stated:

> "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion." 378 F.3d at 544.

Plaintiff's argument that the ALJ erred by failing to address Dr. Kelly's "disability" pronouncement fails for multiple reasons. First, the ALJ was not required to perform a *Wilson* analysis for the obvious reason that Dr. Kelly was not a "treating" physician. *Smith v. Commissioner of Social Sec.*, 482 F.3d 873, 875 (6th Cir. 2007), states that "a treating source, accorded the most deference by the SSA, has not only examined the claimant but also has an 'ongoing treatment relationship' with her consistent with accepted medical practice." *Id.*; 20 C.F.R. § 404.1527. In contrast, a "'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' her." *Id.* Here, because Kelly examined Plaintiff on only three occasions over an 11-day span in January 2003, he should be categorized as an examining but "non-treating" source.

Next, Plaintiff's argument that the ALJ should have adopted Kelly's "disability" opinion is further undermined by the fact that the physician's notes state only that Plaintiff was "unable to work at this time" (Tr. 113). Kelly's statement, made approximately seven months after Plaintiff's work accident, does not indicate whether Plaintiff is precluded from *all* work or merely his job as an auto glass installer. Likewise, the statement does not mention the duration of the work release, suggesting that the disability "at this time" was temporary rather than permanent. Finally and most obviously, Plaintiff's admitted level of activity stands at odds with the argument that he is unable to perform any work. Although the ALJ found correctly that Plaintiff's seasonal lawn work did not constitute substantial gainful activity, his part-time employment, along with his continued ability to read, drive,

socialize, and perform household chores supports the ALJ's determination that he could perform sedentary work (Tr. 15-16).

In closing, the Court notes that its non-disability finding is not intended to trivialize Plaintiff's limitations as his shoulder injury and peripheral neuropathy. However, the administrative decision is well within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc), the ALJ's decision should not be disturbed by this Court.

## **CONCLUSION**

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be DENIED, and Defendant's Motion for Summary Judgment GRANTED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise

response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

                                        S/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated: September 20, 2007

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 20, 2007.

                                        S/G. Wilson
                                        Judicial Assistant